258 P.2d 751

STATE v. BOUNDS.

No. 7901.

Supreme Court of Idaho.

June 11, 1953.

Jerry Smith, Lewiston, for appellant.

Robert E. Smylie, Atty. Gen., and J. R. Smead and Leonard Bielenberg, Assts. Atty. Gen., for respondent.

GIVENS, Justice.

February 10, 1952 about 6:45 p. m., a Hudson automobile driven by appellant westerly on an oil paved State highway in Nez Perce County closely paralleling the Clearwater River, at a speed variously estimated at 50 miles per hour and upwards, just west of the county line between Clear-

water and Nez Perce Counties ran into and struck an automobile parked on the north shoulder of the highway off the oiled portion thereof, in second gear and with its brakes on, containing Mr. and Mrs. Marks and their three small children. Appellant's car went 22 feet west from the approximate point of impact and over the bank into the river. The Marks' car went westerly from the point of impact about 126 feet and then over the bank into the river.

Two cars were approaching from the west. O'Bryan, the driver of the lead car, testified his lights were on dim; that he saw the lights of appellant's car some hundreds of feet to the east where there was a curve in the road and that he also saw the Marks' car parked north of the highway, off the oiled part thereof; that his car was about even with the parked car at the time of impact and there was ample room between his car and the Marks' car for appellant's car to have passed between them. The testimony of the occupants of the automobile following O'Bryan is substantially to the same effect. These cars both stopped.

Appellant extricated himself from his car and with some assistance reached the bank of the river and was immediately taken to a Hospital in Orofino. That evening, though efforts were made from the land and by boat to find it, the Marks' car was so submerged it was not located until the following morning when the occupants were found dead therein.

Appellant was prosecuted and convicted of manslaughter for the death of Mrs. Marks, who had drowned. The information alleged that he—

"* * *, in an unlawful manner, to-wit, carelessly, and heedlessly in wilful and wanton disregard of the rights or safety of others, and without due caution and circumspection, and at an excessive rate of speed, and in a manner so as to endanger person and property, and while under the influence of intoxicating liquor, and while so doing did drive said motor vehicle into and collide with another motor vehicle in which said Juanita Parson Marks was a passenger, * * *."

Assignments 1 and 2 urge the court erred in giving Instruction No. 9[1] and refusing defendant's requested Instruction No. 1,[2] because the information alleged

1.     "No. 9.
"I further instruct you that it is not necessary, in order to convict the defendant, that you find beyond a reasonable doubt both the violation of law by the defendant as to his unlawful method of driving his car and that of being intoxicated, but if you find, beyond a reasonable doubt that either of said unlawful acts was the cause of the death of said

Juanita Parsons Marks, then you are justified in finding the defendant guilty, it only being necessary that you all agree as to which of said violations, if not both, you are basing your verdict on."

2.     "Defendant's Requested Instruction No. 1.
"You are instructed that in order to convict the defendant that the evidence must convince you beyond a reasonable

three statutory violations constituting the manslaughter charge and Instruction No. 9 enumerated only two. The essentials of the information and the proof necessary thereto were given to the jury in Instructions Nos. 1, 8 and 9, and the grouping of the violations of law in No. 9 comprehended all alleged causative elements and the jury was sufficiently told they had to agree on the particular statutory violation or violations which was or were the proximate cause or causes of the death and, therefore, these assignments are without merit.

■ Assignment No. 3 is that it was error and violative of the rule in State v. Bush, 50 Idaho 166, 295 P. 432, State v. Copenbarger, 52 Idaho 441, 16 P.2d 383, and State v. Johnston, 61 Idaho 87, 98 P.2d 628, for the State to attempt, unsuccessfully, to introduce broken pieces of a glass bottle still containing whiskey, which were found the next morning on the bank of the river by the tracks of appellant's automobile going into the river. Parts, assertedly, of appellant's automobile were found at about the same place. The prosecutor was not without justification in attempting to have these pieces of a broken bottle and contents admitted, State v. Johnston, supra; State v. Kleier, 69 Idaho 278 at page 287, 206 P.2d 513; People v. Skoff, 131 Cal. App. 235, 21 P.2d 118; People v. Richardson, 25 Cal.App.2d 408, 77 P.2d 483; and

his proffer, simply because the court ruled against him, did not fall within the condemnation of the above cases. State v. Howard, 57 Idaho 381, 65 P.2d 764; State v. McCandless, 70 Idaho 468 at page 471, 222 P.2d 156.

■ The fourth assignment charged misconduct because the prosecutor cross-examined appellant's witness Beck as to whether he had made statements to Mrs. Kyle, Deputy Sheriff, denied by Beck, with regard to liquor drunk by appellant and his companions the afternoon of the fatal day; and cross-examination of appellant as to his statements to Dr. Hopkins, who attended appellant when he was brought to the Hospital, denied or not remembered by appellant, and then the prosecutor did not produce witnesses to refute Beck's or appellant's denials. Mrs. Kyle was called in rebuttal and appellant objected because she had been in the courtroom, urging that witnesses had been excluded—though no order appears in the record at the commencement of the trial. It was stated she had not been in the courtroom when Beck testified as to the conversation with her and there is nothing indicative of bad faith in Mrs. Kyle's remaining in the courtroom, which would prevent her testifying as to the conversation with Beck. Nevertheless, the court refused to allow her to testify. Appellant blocked Mrs. Kyle from testify-

doubt that he violated at least one of the laws governing the rules of the road set forth in the Information, and that all of you agree upon the specific law which

he violated, and agree that such specific violation was the cause of the accident and resulting death of the said Juanita Parsons Marks."

ing, hence the situation was not comparable to that criticized in the Bush, Copenbarger, and Johnston cases, supra.

■ Miss Diane Shriner, a nurse's aide, and Mrs. Eleanor C. Van Horn, R.N., under the direction and guidance of Dr. Hopkins, attended appellant at the Hospital and testified to similar statements, and as to their opinions of appellant being under the influence of intoxicating liquor, and also as to the amount appellant stated he had imbibed during the day and early evening. Their testimony was sufficiently similar to the cross-examination of appellant as to his statements to Dr. Hopkins in their hearing to remove it from the criticism of such cases. Furthermore, the prosecutor need not call all contradictory or impeaching witnesses. State v. Allen, 54 Idaho 459 at page 465, 34 P.2d 45.

■ Appellant urges the testimony of these nurses was privileged under Section 9–203(4), I.C. Nurses are not mentioned in the statute. We expressly do not decide whether the privilege extends to nurses present with the physician as his immediate and necessary technical agents and assistants in giving medical care and attention, because if the testimony of the physician is not privileged, obviously the testimony of the nurses would not be privileged.

It will be noticed in Section 9–203, I.C., careful differentiation is made in the first subdivision as to husband and wife being examined against each other in certain civil and criminal cases; in the second and third subdivisions as to an attorney and a clergyman or priest and the fifth as to public officers, no exception is made. In the fourth subdivision, which has to do with a physician or surgeon, the privilege is specifically granted only in civil actions. The internal evidence of the Section, therefore, indicates it was the legislative intent that the privilege as to communications to physicians was advisedly limited to civil actions, and such has been the ruling in all the jurisdictions, except Washington—State v. Miller, 105 Wash. 475, 178 P. 459—which, so far as we have been able to find, have passed upon this question. People v. Lane, 101 Cal. 513, 36 P. 16; People v. West, 106 Cal. 89, 39 P. 207; People v. Warner, 117 Cal. 637, 49 P. 841; People v. Griffith, 146 Cal. 339, 80 P. 68; People v. Dutton, 62 Cal.App.2d 862, 145 P.2d 676; Commonwealth v. Edwards, 318 Pa. 1, 178 A. 20, 22; People v. Brecht, 120 App.Div. 769, 105 N.Y.S. 436 at page 438 # 4. State v. Dean, 69 Utah 268, 254 P. 142, discusses the point at length and noting there was no privilege as to communications made to physicians under the common law, which seems to be universally accepted as correct, and considering and adequately answering all of the arguments urged herein by appellant, concluded that under a statute almost identical with ours, the privilege does not apply to criminal cases. It was, therefore, not error to admit the testimony of the two nurses.

■ Appellant next assigns as error the refusal of the trial court to poll the jury with regard to their agreement on the specific element or elements in the information upon which they based their verdict. The jury was polled and severally affirmed the verdict as his or hers, thus complying with Section 19–2316, I.C. Appellant cites no authorities in support of this error, but urges we should re-examine and over-rule State v. Salhus, 68 Idaho 75, 189 P.2d 372, on this point.

We see no occasion to recede from our former position. State v. Ogilvie, Or., 175 P.2d 454.

■ The prosecuting attorney, in his opening argument, commented on the testimony of three witnesses who testified for the State they had sold liquor to appellant on the day of the tragedy, as follows:

"* * *. Thirdly,—driving while under the influence of intoxicating liquor.

"Now, as to that third portion of the charge the State called here three bartenders,—Joe Pollack, Ben Mc-Evers, and Eddie Rambo,—three men who are in the business of selling beer to the public; and I don't think you are going to find these men going away out on a limb testifying against a railroad man or anyone else who has many friends who patronize their places of business. I think that should be taken into consideration in weighing their testimony. As you recall, each one of them said the defendant had only one drink in each of their places of business."

Appellant objected on the ground—"he is trying to impeach his own witnesses."

The only ruling or comment of the court was as follows:

"The Court: The argument will proceed, and counsel is admonished to keep within the record.

\* \* \* \* \* \*

"The Court: The Court doesn't care to comment on the evidence and is not allowed to. The only thing is you are admonished to keep within the record and the jury will remember the facts as they were testified to."

The prosecutor did not further mention these particular witnesses, but continued his argument as to appellant's activities and drinking during the day. There was no impeachment because, of course, the argument of an attorney is not evidence and the admonition of the court to the effect the jury would consider the facts as testified to was amply appropriate and there was nothing erroneous in the incident. State v. Mundell, 66 Idaho 339 at page 348, 158 P.2d 799.

■ Appellant's last assignment challenges the sufficiency of the evidence to sustain the verdict. Appellant himself testified he was drinking in the afternoon and early part of the evening. There was like-

wise testimony of others as to his drinking and his apparent condition immediately before and after the accident. He testified that he first saw the parked car off the highway about one hundred or one hundred fifty feet distant, and the other cars approaching; that he put on his brakes and his car went into a skid which he could not control and skidded sideways into the parked car. As stated above, this knocked the standing car some 126 feet, in second gear and with its brakes set, causing it to plunge off the bank into the river and appellant's car went 22 feet before going off the bank. The evidence that the approaching cars dimmed their lights; that there was sufficient room between them and the parked car for appellant's car to pass; the speed of appellant's automobile and the force and result of the impact on the parked car and appellant's car and their respective conditions as shown by the photographic exhibits, and the evidence as to appellant's drinking and condition before and after the accident, all conclusively sustain the verdict. State v. Neil, 58 Idaho 359 at page 370, 74 P.2d 586; State v. Marshall, 61 Idaho 81, 97 P.2d 657; State v. Salhus, 68 Idaho 75 at page 96, 189 P.2d 372, supra; State v. Shaw, 69 Idaho 365, 207 P.2d 540; State v. Ayres, 70 Idaho 18, 211 P.2d 142.

The judgment is affirmed.

PORTER, C. J., and TAYLOR and THOMAS, JJ., concur.

KEETON, J., concurs in the conclusion.