354 P.2d 751

STATE of Idaho, Plaintiff-Respondent,

v.

Max J. COBURN, Defendant-Appellant.

No. 8785.

Supreme Court of Idaho.

Aug. 3, 1960.

438

Black & Black, Pocatello, for appellant.

Atty. Gen., Dell W. Smith, Pros. Atty.,: Preston, for respondent.

Frank L. Benson, Atty. Gen., Boise, Merrill Gee, Sp. Asst. Pros. Atty., Pocatello, Wm. E. Swope & Jedd G. Owens, Asst.

with her husband, Darold, was proceeding on U. S. Highway No. 91, in a southeasterly direction toward Preston, Franklin County, Idaho. Appellant, proceeding in the same direction at a faster rate of speed, in attempting to pass the Baxter automobile, drove his vehicle into the rear of the Baxter car, which at that moment burst into flames. Thereafter, the Baxter auto traveled 72 feet on the pavement from the point of impact and an additional 108 feet off the roadway, where it overturned once and came to rest on its wheels in a borrow pit. Both occupants of the automobile died in the fire.

Damage to the Baxter car was extensive. In addition to that caused by the fire, the car body was torn from the rear springs, the gasoline tank doubled up, and the spring hangers broken away from the frame. Appellant's auto, which experts estimated to be traveling 75 miles per hour at the point where the collision occurred, was heavily damaged in the front, the greater portion thereof being from a point in the front center to the right front side.

Appellant estimated his speed at the point where the accident occurred to be 50 to 55 miles per hour. In describing the accident, he stated:

> " * * * gravel and rock started hitting my windshield, and a cloud of dust came up and I couldn't see to go by, and I decided I hadn't better pass, and I pulled back on my side of the

McQUADE, Justice.

Defendant appeals from a judgment of conviction of the charge of negligent homicide, specifying errors as follows: that the evidence is insufficient to support the verdict; that the names of three of the State's witnesses were allowed to be endorsed on the information after trial had commenced; that the jury were permitted to examine the automobiles involved; that appellant's personal physician was allowed to testify for the State over appellant's objection; that the results of a blood alcohol test were improperly admitted into evidence; that the court erroneously instructed the jury; and that the court failed to comply with certain procedural requirements hereinafter set out in detail.

In the early morning hours of November 9, 1958, the deceased, Hazel Baxter, riding

road, and the next I knew was 'Bang' and I don't remember anything more."

The record discloses appellant consumed at least three and one-half beers from late afternoon of November 8, 1958, until just prior to the accident in the early morning hours of November 9. A blood sample taken from appellant by his physician, Dr. O. R. Cutler, at the request of Sheriff Talbot, immediately following the accident, was tested at the L. D. S. Hospital in Logan, Utah. Results of this test showed a content of 0.178 per cent by weight of alcohol in defendant's blood.

The jury returned a verdict of guilty. Appellant was fined $500 and sentenced to serve nine months in the Franklin County jail. This appeal is from the judgment and from an order denying appellant's motion for a new trial.

Appellant asserts insufficiency of the evidence to support the jury's verdict in that the factual situation from the record clearly shows he was not guilty of consummating the acts charged in the information.

The information, in brief, charges appellant with driving at an excessive rate of speed and while under the influence of intoxicating liquor, the proximate result of which caused Hazel Baxter to suffer mortal wounds from which she died. We have thoroughly reviewed the facts and circumstances upon which the information was based. Although a conflict exists relative to the speed of appellant's automobile, this conflict was resolved by the verdict of the jury. Appellant's testimony relating to his consumption of alcoholic beverages is in conflict with the results of the blood alcohol test, which conflict was also resolved by the jury. That appellant's acts are sufficient upon which a charge of negligent homicide can be predicated has been previously decided by this Court. In State v. Aims, 80 Idaho 146, 326 P.2d 998, 1000, we said:

"Driving while under the influence of intoxicating liquor and driving at excessive speed are each criminal offenses. However, in a case such as this, they are components and elements of the offense of negligent homicide. They are, in a sense, the manner and means of the commission of the offense charged. The reckless disregard of the safety of others, as here charged, arises out of driving while under the influence of intoxicating liquor and at excessive speed. Evidence of those acts is admissible to prove the charge. State v. Brown, 36 Idaho 272, 211 P. 60; State v. Alvord, 46 Idaho 765, 271 P. 322; State v. Farnsworth, 51 Idaho 768, 10 P.2d 295; State v. Salhus, 68 Idaho 75, 189 P.2d 372; State v. Ayres, 70 Idaho 18, 211 P.2d 142; State v. Scott, 72 Idaho 202, 239 P.2d 258."

Where the evidence is in conflict but is sufficient to sustain a conviction of the crime charged, the verdict of the jury will not be disturbed on appeal. State v. Kleier, 69 Idaho 278, 206 P.2d 513; State v. Eikelberger, 71 Idaho 282, 230 P.2d 696; State v. Hewitt, 73 Idaho 452, 254 P.2d 677; State v. Fedder, 76 Idaho 535, 285 P.2d 802.

Appellant next alleges error by the trial court in permitting the endorsement of three State's witnesses on the information after commencement of the trial. Names of Leon Taylor and Dale Nelson, M.D., were endorsed, over appellant's objection, immediately after the jury was empaneled, but prior to the hearing of any testimony. In their motion to endorse the names of Taylor and Nelson, counsel for respondent stated:

"That the information was filed herein on the 13th day of January, and that the names of these witnesses were not endorsed on the information through inadvertence and oversight of your affiant, and that this omission was not discovered until the 20th day of February, 1959, at which time preparation for trial was being made."

█ Dr. Nelson did not testify in the case. Therefore, as to him, any assertion by appellant that he was injured by such action of the court is not well founded. Regarding the witness Taylor, the record discloses the notice of motion to endorse, etc., was filed February 20, 1959, and the motion filed February 26, 1959, at least six days before trial. We think the notice and motion were timely filed and that appellant had ample time during which he might prepare to meet the testimony of the witness. State v. Mundell, 66 Idaho 297, 158 P.2d 818; State v. Stewart, 46 Idaho 646, 270 P. 140; State v. Hoagland, 39 Idaho 405, 228 P. 314.

On the third day of trial, respondent moved for the endorsement of the name of Maxine Peterson on the information. The court, over appellant's objection, granted respondent's motion.

Idaho Code sec. 19-1302, among other things, provides for the endorsement of the names of witnesses on the information. It reads:

"Filing and indorsement of information.—All informations shall be filed in the court having jurisdiction of the offense specified therein by the prosecuting attorney as informant; he shall subscribe his name thereto and indorse thereon the names of the witnesses known to him at the time of filing the same; and at such time before the trial of any case as the court may rule or otherwise prescribe, he shall indorse thereon the names of such other witnesses as shall then be known to him:

provided, however, that the witnesses called by the state in rebuttal need not be indorsed upon the information."

State v. Hoagland, supra, established that the test to be applied in those cases where the names of witnesses were sought to be endorsed on the information after the trial begins is whether defendant would be surprised or prejudiced by such action, if allowed; further, that an application by defendant to postpone the trial on the ground of surprise at the introduction of a witness whose name is not indorsed on the information must, when made, be supported by an affidavit or other evidence showing surprise, in the absence of which the application for postponement should be denied.

At the time respondent moved for the endorsement of the name of the witness Peterson, counsel stated:

"Mr. Gee: The State of Idaho now moves the Court for leave to add to the Information the name of Maxine Peterson as an additional witness, and the address of the witness is Preston, Idaho, and represents to the Court that it was not until the testimony yesterday afternoon that it became apparent to the State that the name of this additional witness was needed.

"The testimony expected to be elicited from the witness is that she received the samples of blood taken from the defendant; she was present when it was extracted by the doctor, Doctor Cutler, and that she delivered the samples to the Sheriff, Ray Talbot."

The record discloses the testimony of Maxine Peterson did in fact aid in the establishment of the chain of possession of the blood samples taken from appellant by Dr. Cutler. Mrs. Peterson also testified she smelled a strong odor of alcohol on appellant at the time of his admission to the Preston hospital immediately following the accident. If appellant was prejudiced or surprised by the testimony of Mrs. Peterson, then under the rule of State v. Hoagland, supra, he should have moved for a continuance of the trial at the time the State moved for the endorsement of her name on the information so that he might prepare to meet the witness' testimony. Here, the essence of appellant's objection to the endorsement was that the motion came too late in the trial. Under these circumstances, we cannot say the action of the court constituted reversible error, since our law vests some discretion in the trial judge in ruling on the motion. However, under our concept for the trial of defendants in criminal actions, great caution should be exercised before permitting a witness' name to be endorsed on the information during the course of trial, and it is only in those situations where no preju-

dice to the defendant would result that the endorsement should ever be allowed.

█ Appellant challenges the court's action in allowing the jury to examine the automobiles involved in the accident, which action, appellant contends, constituted the receipt of evidence out of court.

At the time respondent requested the court to allow the jury to view the automobiles, counsel for appellant objected on the ground that they were not in the same condition and the further ground that nothing of value could be gained by allowing the jury to view them. In overruling appellant's objections, the court stated the sheriff had previously testified concerning the condition of the automobiles, it being the sheriff's testimony that they were in substantially the same state as found immediately following the accident. It is now asserted that I.C. sec. 19–2124 does not provide for the action of the court in granting respondent's request. The statute reads

"View of premises by jury.—When, in the opinion of the court, it is proper that the jury should view the place in which the offense is charged to have been committed, or in which any other material fact occurred, it may order the jury to be conducted in a body, in the custody of the sheriff, to the place, which must be shown to them by a person appointed by the court for that purpose; and the sheriff must be sworn to suffer no person to speak or communicate with the jury, nor to do so himself, on any subject connected with the trial, and to return them into court without unnecessary delay, or at a specified time."

In State v. Main, 37 Idaho 449, 216 P. 731, 734, this Court, in discussing the above statute, said:

"* * * The purpose of the statute is not to permit the taking of evidence out of court, but simply to permit the jury to view the place where the transaction is shown to have occurred, in order that they may the better understand the evidence which has been introduced. * * *"

In light of this language, we must agree with appellant's contention that the language of the statute does not provide for the viewing by the jury of objects involved in the action. In spite of some language to the contrary contained in State v. Main, supra, we do not think the absence of statutory authority otherwise precludes the court from ordering such view.

A case directly in point is State v. Black, 193 Or. 295, 236 P.2d 326, 330, involving a prosecution for the theft of certain cattle. The Oregon statute similar to I.C. sec. 19–2124 in essence provided that the court

could order a jury to view the place in which any material fact occurred whenever, in the opinion of the court, such action was deemed proper. Holding that their statute did not authorize the court to allow the jury to view the cattle and their identifying marks, the court nevertheless, after reviewing the authorities, concluded the allowance of such view was a matter within the inherent power of the trial court, to be exercised only within its sound discretion. In this regard, we quote from the decision as follows:

"We think the better rule is: When it appears a view of any property, which cannot be brought into the courtroom for presentation during the course of the trial, might be of assistance to the jury in determining the guilt or innocence of a defendant in a criminal case or any material issue in a civil case, it is a matter within the inherent powers of the trial court to be exercised only within its sound discretion and in accordance with the limitations applied to all views as set forth in § 5–302, O.C.L.A. See Duke v. State, 49 Ariz. 93, 64 P.2d 1033, 1035.

"We cannot see wherein the defendant could possibly have been prejudiced by this act any more than he would have been had it been possible to have had the cow and calf brought into the courtroom and there identified as the livestock in question during the trial of the case. The jurors here merely obtained what was necessary to enable them to understand more fully what had been seen and to correlate the things seen with the evidence which they had heard.

"If the photographs of the same cattle were competent evidence, as they were in this case, why not allow the jury to look at the property itself instead of a picture of the same? There may, for example, be instances where a trial court should not grant a view of such object, particularly when it would be expensive or cause undue delay, or if, allowing a view, it would have no useful purpose; but this affords no reason for a ruling that the power to order a view does not exist or should not be exercised in any case."

We think the reasoning of the Oregon Court and that of the authorities therein cited and relied upon to be the correct rule. Otherwise, it would be virtually impossible ever to have the jury consider any evidence, aside from photographs, which is incapable of being brought into court. See also Bell, Handbook of Evidence for the Idaho Lawyer, pp. 178, 179. The evidence being material, relevant, and otherwise admissible, we must conclude the ruling to have been proper in this instance.

■ Appellant contends that all communications between himself and his personal physician, Dr. Cutler, were privileged under the provisions of I.C. sec. 9–203(4) and I.C. sec. 19–2110, and therefore it was reversible error to allow the doctor to testify in this action over his objections. We need only cite, contrary to appellant's contention, State v. Bounds, 74 Idaho 136, 258 P.2d 751, 753, wherein we said:

"It will be noticed in Section 9–203, I.C., * * * [in] the fourth subdivision, which has to do with a physician or surgeon, the privilege is specifically granted only in civil actions. The internal evidence of the Section, therefore, indicates *it was the legislative intent that the privilege as to communications to physicians was advisedly limited to civil actions*, and such has been the ruling in all the jurisdictions, except Washington * * *. State v. Dean, 69 Utah 268, 254 P. 142, discusses the point at length and noting there was no privilege as to communications made to physicians under the common law, which seems to be universally accepted as correct, and considering and adequately answering all of the arguments urged herein by appellant, concluded that under a statute almost identical with ours, the privilege does not apply to criminal cases. * * *" (Emphasis supplied.)

Appellant next contends the court erred in permitting any of the evidence of the blood test to be admitted in that such evidence was not properly identified nor was any attempt made by respondent to prove the blood tested by the witness Veibell was the blood of appellant. This evidence was used to prove intoxication of appellant immediately following the accident.

■ Contrary to appellant's assertion, the record sufficiently establishes a chain of possession of the blood samples taken from appellant. The evidence is clear the blood was drawn from appellant by Dr. Cutler, given to Nurse Peterson, who sealed and marked it, and who delivered it to Sheriff Talbot. The sheriff then took the samples to the L. D. S. Hospital at Logan, Utah, delivering them to a nurse who said she would put them into the refrigerator for the technician. The following morning, the witness Veibell took those blood samples labeled "Max Coburn" from the refrigerator and performed the required tests thereon.

Although the testimony of the person receiving the blood samples at the hospital is absent from the record, nevertheless the circumstances sufficiently disclose the identification of the samples tested as being those drawn from appellant by Dr. Cutler. Nor is there any evidence which would cast the slightest inference that any irregularity occurred after the samples were delivered

to the hospital by Sheriff Talbot. Therefore, such evidence was properly admitted.

Appellant was charged under I.C. sec. 49–1101, which in part provides:

"(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle *in reckless disregard of the safety of others,* the person so operating such vehicle shall be guilty of negligent homicide." (Emphasis supplied.)

■ The court, in paragraph 2 of instruction no. 1, charged the jury as follows:

"2. That the defendant did the thing above set out, if you find that he did do *them,* in a negligent, heedless, reckless and careless manner and without due caution and circumspection."

Appellant argues the above instruction is erroneous because it allowed the jury to find him guilty of the offense charged on the basis of ordinary negligence, contrary to I.C. sec. 49–1101. Although that portion of instruction no. 1, as above set out, is erroneous, State v. Bock, 80 Idaho 296, 328 P.2d 1065, the error contained therein was cured by the giving of instructions nos. 9 and 25, requiring the jury to find on the basis of criminal negligence, and therefore this does not constitute reversible error.

State v. Brill, 21 Idaho 269, 121 P. 79; State v. Jurko, 42 Idaho 319, 245 P. 685.

■ Error is assigned in the giving of instruction no. 6, which reads:

"It is not necessary that all the facts or circumstances surrounding the testimony that has been given on behalf of the State shall be established beyond a reasonable doubt. All that is necessary is that all the facts and circumstances in evidence, together, shall establish the defendant's guilt beyond a reasonable doubt * * *"

in that said instruction advises the jury that they may find appellant guilty regardless of whether all the material allegations of the information are proved beyond a reasonable doubt. Instruction no. 4 properly charges the jury concerning the proof of the material allegations of the information. Considering instruction no. 6 in this manner, appellant's contention that it is erroneous is without merit.

Appellant contends in his eighth assignment that instructions nos. 11, 12 and 13 are erroneous, in that when taken together they advise the jury he was intoxicated at the time of the accident. There is no merit in this contention. Cf. State v. Cox, 82 Idaho 150, 351 P.2d 472; State v. Anderson, 82 Idaho 293, 352 P.2d 972.

In his ninth assignment, appellant alleges error in the failure to give requested in-

structions nos. 2, 6, and 7, the effect of which resulted in a failure to instruct the jury on appellant's theory of the case. Regarding appellant's requested instruction no. 2, we think the same was sufficiently covered in that portion of instruction no. 9 which provides:

"A person is not capable of committing a crime when such person committed the act charged, under a mistake of facts which disproves any criminal intent or criminal negligence, *or who committed the act charged through misfortune or by accident*, when it appears there was no evil design, intention, or criminal negligence." (Emphasis supplied.)

Appellant's requested instructions nos. 6 and 7 were adequately covered by instructions nos. 9 and 18, as given.

Appellant contends I.C. sec. 19–2132, which provides:

"Instructions to jury—Requests.—In charging the jury, the court must state to them all matters of law necessary for their information. Either party may present to the court any written charge and request that it be given. If the court thinks it correct and pertinent, it must be given; if not, it must be refused. Upon each charge presented and given or refused, the court must indorse and sign its decision. If part be given and part refused, the court must distinguish, showing by the indorsement what part of the charge was given and what part refused * * *"

was not adequately complied with by the trial court in that it did not follow the last sentence of the statute in making its indorsement on appellant's requested instructions. In each instance, the court made the following notation: "Refused except as given as modified."

Nowhere has appellant argued he was in any way prejudiced by the action of the court in failing to designate specifically in its indorsement what portion of the requested instruction was given and which portion was refused. In the absence of any showing of prejudice to appellant, we cannot say that the indorsements as made were reversibly erroneous.

It is asserted the court erred in failing to give appellant's requested instruction no. 8, the essence of which instructs the jury as to the reputation of appellant as a careful and prudent driver. No authority is cited in support of this contention, nor is there what would be considered adequate argument thereon in the brief, and by reason thereof this assignment will not be considered. State v. Davidson, 78 Idaho 553, 309 P.2d 211; Zenier v. Spokane International Railroad Co., 78 Idaho 196, 300 P.2d 494; State v. Richardson, 56

Idaho 150, 50 P.2d 1012; Nash v. Meyer, 54 Idaho 283, 31 P.2d 273; Harris v. Chapman, 51 Idaho 283, 5 P.2d 733.

■ Appellant argues the court failed to consider his application for clemency and probation made orally at the time of sentencing. In the recent case of State v. Anderson, 82 Idaho 293, 352 P.2d 972, 980, the same issue was discussed. We said:

"Appellant assigns as error the trial court's refusal to recognize and grant his application for clemency and probation, made orally at the time of sentence, citing I.C., § 19–2601; also State v. Mitchell, 77 Idaho 115, 289 P. 2d 315, which holds that such an applicant is entitled to have the trial court consider the facts in exercising its discretion in determining whether the application should be granted. In the Mitchell case the application was in writing, and it, together with the court's rulings thereon, constituted a part of the record on appeal. Here, however, the application, being oral, is not a part of the appellate record; neither are the court's rulings on denial of the application a part of such record; nor does there appear to have been any request that the rulings be incorporated into the record.

"Under similar circumstances a record must be made of the proceedings on an application for clemency and probation, including the ruling thereon of the trial court in the event a review of the ruling is desired on an appeal.

"Here, in the absence of a record, it cannot be presumed that the trial court did not consider appellant's application for clemency and his grounds urged therefor. Such is indicated by the sentence of 4 months jail imprisonment and the fine of $500.00, as compared to the maximum sentence provided for the offense of negligent homicide of one year imprisonment and $1,000 fine. I.C. § 49–1101."

Here, appellant was sentenced to nine months jail imprisonment and a fine of $500. In light of the views expressed in the Anderson case, we cannot say that the trial court erred.

The judgment and order denying appellant's motion for a new trial are affirmed.

TAYLOR, C. J., and SMITH, KNUDSON, and McFADDEN, JJ., concur.