687 P.2d 591

**J. C. MARSHALL, Plaintiff-Appellant,**

v.

**Duane BARE and Diane Bare, husband and wife, Defendants-Respondents.**

No. 14617.

Court of Appeals of Idaho.

Aug. 31, 1984.

202

John J. Rose, Jr., Wallace, for plaintiff-appellant.

R. Romer Brown, Brown & Justh, Coeur d'Alene, for defendants-respondents.

WALTERS, Chief Judge.

J. C. Marshall contracted to sell a lot to Duane and Diane Bare and to construct a new home on the property. The Bares took possession of the property following completion of the home. Approximately three and one-half months later, on February 15, 1979, the parties closed the transaction; the Bares paid the purchase price and received a deed to the property from Marshall. Marshall later filed suit against the Bares to collect "rent" for the period of time the Bares were in possession of the property prior to closing. The Bares counterclaimed to recover from Marshall the cost of repairs to remedy defects in the construction of the home.

Following trial before a magistrate, the court awarded judgment to both parties. Marshall received $920, representing rent at the rate of $10.00 per day for 92 days, and the Bares received $2183 for their repairs and corrections. The judgment gave net recovery to the Bares of $1263 after offset for the rental awarded to Marshall. Both parties appealed to the district court.

Sitting as an appellate court, the district judge affirmed the award to the Bares in the amount of $2183. However, the district court reversed the award to Marshall for the recovery of rent. The district court held that the Bares were not liable for any "rent" because there was no contract or agreement for the payment of rent between the parties and the Bares were in possession as contract purchasers of the property, not as tenants. But the district court further concluded that because Marshall had incurred the expense of interest on his construction loan, insurance and property taxes, for the period the Bares were in possession prior to closing, the Bares would be unjustly enriched if they did not compensate Marshall for those expenses. The district court therefore remanded the case to the magistrate for determination of the amount of unjust enrichment for which the Bares should be liable to Marshall. Marshall now appeals from the decision of the district court. We affirm the decision of the district court in respect to the award in favor of the Bares. We also affirm the district court's disallowance of the recovery of rent, but we reverse the district court's determination allowing recovery on the unjust enrichment theory.

Marshall raises four issues on appeal. First, he questions whether the Bares should recover for Marshall's breach of warranty of workmanship, because the Bares sold their house to a third party

before any of the defects were corrected. Second, he contends that the amount of the magistrate's award of damages for his breach of warranty is not supported by substantial, competent evidence. Third, he asserts it was error to exclude as hearsay Marshall's testimony on the fair market value of the repair work done on the Bares' home, which was based upon statements from other contractors. Finally, he argues that the district court should have affirmed the magistrate's award of damages for the rental value of the house, or in the alternative that the amount of unjust enrichment is equal to the rental value of the house. Both parties seek an award of attorney fees on appeal.

I

We first consider Marshall's challenge to the propriety of any award for his breach of warranty. He contends that because the Bares had sold the house before the repairs were made, and because the contract under which the Bares sold the house did not require that these repairs be made, the Bares suffered no injury for which Marshall could be held liable.

At trial, evidence was submitted showing that the Bares' purchase of the property was financed by a bank loan guaranteed by the Veteran's Administration. The plans and specifications for the construction of the house were approved by the VA. Upon completion of the building, Marshall signed a written warranty, warranting that the house was in substantial compliance with the approved plans. From the evidence, the trial court found that "during the spring thaw in 1979, problems did develop which constituted a breach of the warranty." Marshall was notified by the VA of the corrections which were needed. In the meantime, the Bares, who were moving out of state, sold the house to a third party. In that transaction, the Bares agreed to correct most of the items which were defective under the warranty. When Marshall failed to remedy the defects, the Bares hired others to do the work.

■ Contrary to Marshall's contention, the evidence supports the court's finding that the Bares assumed the responsibility with their buyers to have the defects remedied. This finding will be upheld. Nor does the fact of the sale of the house before the repairs were made afford any relief to Marshall from liability for breach of the warranty.

Marshall argues that "[w]rong without damage or damage without wrong does not constitute a cause of action," citing 22 Am. Jur.2d *Damages* § 2 (1965). However, that maxim is not applicable here. The wrong is Marshall's breach of his warranty of workmanship; the damage is the economic loss suffered by the Bares as a result of the breach. The magistrate found there was a causal relationship between the alleged defective workmanship and the economic loss suffered by the Bares. The magistrate's finding in this regard is supported by substantial evidence and will be upheld. I.R.C.P. 52(a).

II

■ Marshall also contends that the amount of the magistrate's award of damages for his breach is not supported by the evidence. The court awarded damages for the cost of repairing a wooden deck and the concrete walkway in front of the house, replacing posts to support the eaves and excavating on two sides of the house to provide for drainage of water away from the house, to prevent water from leaking into the basement. The testimony of several witnesses established the scope of the work done and the expense which the Bares incurred in making those repairs. Marshall did not produce any *evidence* to dispute that testimony, to establish that the cost of that work was unreasonable, or to establish that the work done was not necessary, though he argued that such was the case. The magistrate implicitly found the Bares' economic loss from Marshall's breach was equal to the cost of repairing the defects, and we see no error in that finding upon the facts of this case. The magistrate's findings are supported by the

evidence and its conclusions of law on this issue follow from those findings. *Ustick v. Ustick,* 104 Idaho 215, 657 P.2d 1083 (Ct. App.1983). Therefore, we affirm the award of damages to the Bares.

### III

■ Marshall also challenges the exclusion of testimony which he offered at trial. His offer of proof shows that Marshall would have testified that other contractors would have repaired the damages to the home at substantially less expense than the Bares incurred. The magistrate ruled that this testimony was hearsay and excluded it. Marshall argues that it is not hearsay because the statements were not offered as proof of the facts contained in the statement but merely as proof that the statement was made. However, if the testimony were offered *only* as proof that the statement was made, we do not see the legal significance of that statement. The statement is relevant to the legal issues presented in this case only if the statement—which tended to show that the expenses incurred by the Bares were excessive—was offered as proof of that fact. If so, the statement was properly excluded under the hearsay rule. *E.g., Frank v. City of Caldwell,* 99 Idaho 498, 584 P.2d 643 (1978). If not, then it was not relevant and could be excluded for that reason. *Briscoe v. Nishitani,* 105 Idaho 175, 667 P.2d 278 (Ct.App.1983). We conclude that the magistrate properly excluded the proferred testimony as hearsay evidence.

### IV

We next address the issue concerning recovery of rent by Marshall. The trial court found:

Bare took possession of the house on or about November 1, 1978. This was accomplished through Bare and Cliff Marshall, who was the son of of [sic] J. C. Marshall, and was employed by his father to oversee the construction projects that J. C. Marshall had in progress, including the Bare house. A week or two before Bare moved into the house, Cliff had advised him that the house was ready and delivered to him the keys to it. According to Cliff Marshall, there was discussion of paperwork to be done and agreements to be made, but Cliff did not know exactly what the requirements were, and since Bare was anxious to move permission was granted by Cliff for him to do so. No agreement relative to payment of rent was made at that time, and no "early occupancy agreement" was prepared or executed.

■ As a general rule, "the relationship between a vendor and a vendee in possession under a contract to purchase land is not ... that of landlord and tenant." 77 Am.Jur.2d VENDOR AND PURCHASER § 322 (1975). The vendee in possession, however, may become liable to the vendor for rent in two instances. The first is where the parties have an express agreement stipulating the circumstances under which the vendee is obligated to pay rent to the vendor. *Id.* § 323. The second arises as an implied obligation where a vendee in possession disaffirms the purchase contract. Under this latter view, when the vendee disaffirms the contract the law implies an obligation on his part to pay for the use and occupancy of the land *ab initio. Id.* § 324.

■ In this case it is undisputed and, as noted, the trial court specifically found that the parties did not have an express agreement concerning rent. Nor did the Bares—the vendees in possession—ever disaffirm the purchase contract; rather the sales transaction was ultimately completed and closed. Under these circumstances the applicable rule is as follows:

Where the vendee under a contract for the sale and purchase of land enters into possession of the land before the conveyance of the title to him, and occupies the property under the contract, which is ultimately carried into effect, the law does not imply a promise upon the purchaser's part to pay rent during the time of his occupation of the premises, and an action for use and occupation cannot be maintained against him. The circumstances

of the occupancy repel any implication of a promise upon the vendee's part to pay rent. The price agreed upon is presumed to be a sufficient consideration for the intermediate occupation of the land as well as the ultimate conveyance of title. The title of the purchaser, as far as his right to occupy is concerned, relates back to the time when he first took possession under his contract to purchase; or, as the rule is sometimes expressed, the previous tenancy is merged in the subsequent conveyance of the fee. It is generally held that since the relation of landlord and tenant in its proper sense does not exist between a vendee and his vendor when the vendee enters under the contract to purchase with the permission of the vendor, no promise on the part of the vendee to pay for the use and occupation will be implied. [Footnotes omitted.]

77 Am.Jur.2d VENDOR AND PURCHASER § 324, pp. 485–86 (1975). Applying the foregoing rule to the facts of this case, we conclude the district court was correct in reversing the magistrate's award of rent to Marshall.

We next address the district court's determination that, as an alternative to the recovery of rent, Marshall was entitled to relief under a theory of unjust enrichment. As noted earlier, the district court concluded that because Marshall incurred the expense of interest on his construction loan, insurance and taxes during the period the Bares were in possession of the property before closing, the Bares would be unjustly enriched if they were not required to compensate Marshall for those expenses. We believe the district court erred in reaching this conclusion.

█ Preliminarily, we believe the district court espoused an improper view of the recovery which could be obtained by Marshall, if he was entitled to relief by way of unjust enrichment. The correct measure would not be the *loss* Marshall suffered by payment of interest, taxes or insurance, but rather the measure should be the *benefit* that the Bares received which would be

unjust for them to retain. *Nelson v. Gish,* 103 Idaho 57, 644 P.2d 980 (Ct.App.1982).

█ More importantly, any benefit to the Bares resulting from the three expenses mentioned by the district court—interest, insurance and taxes—are not recoverable under an unjust enrichment theory under the circumstances of this case. Recovery for unjust enrichment cannot be awarded where, as here, there was an enforceable express contract covering the same subject matter. *Chandler v. Washington Toll Bridge Authority,* 17 Wash.2d 591, 137 P.2d 97 (1943). *See also Hixon v. Allphin,* 76 Idaho 327, 281 P.2d 1042 (1955) (allowing recovery on unjust enrichment where the express contract between the parties was unenforceable.) Marshall and the Bares had signed a real estate purchase and sale agreement on November 11, 1977, which stated that taxes, insurance premiums and interest would be allocated not according to the date of possession but according to the date of closing the transaction. The agreement provided:

> Taxes and water assessments (using the last available assessment as a basis) rents, insurance premiums, interest and reserves on liens, encumbrances or obligations assumed and utilities shall be pro-rated as of the  15th  day of  March  1978 or on the date of closing which ever shall last occur. [Blanks completed in original.]

Further, the settlement statement used at the closing on February 15, 1979 prorated insurance and taxes as of the date of closing. By reason of these express agreements, Marshall's responsibility for property taxes, insurance and interest for the period from November 1, 1978 to February 15, 1979 can not be considered in determining a recovery for unjust enrichment.

## V

█ Finally, both parties have requested attorney fees on appeal under I.C. § 12–121. Because Marshall has not prevailed, he is not entitled to such an award. In respect to the Bares' claim, we do not believe this appeal by Marshall was

brought or pursued frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). It raised a genuine issue of law concerning recovery for rental value or unjust enrichment, under the circumstances of this case. We therefore decline to award fees to the Bares.

In summary, we affirm the award of damages to the Bares on their counterclaim. We affirm the district court's reversal of the magistrate's award of rent, and we reverse the order of the district court regarding recovery by Marshall under the theory of unjust enrichment.

The case is remanded to the district court for entry of a modified judgment consistent herewith. Each party shall bear their own costs on appeal.

BURNETT and SWANSTROM, JJ., concur.